UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Brittany Buescher, et al.,** | ) | **CASE NO. 1:13 CV 2821** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Baldwin Wallace University, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

### Introduction

This matter is before the Court upon defendants' Motion to Dismiss Counts II, III, IV, V, IX, XI, XII, and XIII (Doc. 3).  This case alleges that plaintiffs were treated in a discriminatory manner as students in Baldwin Wallace University's Accelerated Bachelor of Science Degree in Nursing Program, they were misled into enrolling in the program, and wrongfully terminated from it.  For the following reasons, the motion is granted except as to the portion of Count V asserted against defendant BWU.

### Facts

Plaintiffs Brittany Buescher, Emily Kopper, Rachel Lane, Estaban Rodriguez, and Irene Kellett filed this Complaint against Baldwin Wallace University (BWU) and Guy E. Farish, its

Interim Vice President for Academic Affairs and Dean.  Generally, the Complaint alleges the following.  BWU offers an Accelerated Bachelor of Science Degree in Nursing Program (ABSN).  All plaintiffs satisfied the admission requirements and were selected by BWU for admission in August 2012 to the inaugural class in the ABSN.  Plaintiffs made life-altering decisions to enroll in the program whereby a student could obtain a professional nursing degree in a 12 month period.  Buescher, a 34 year old Caucasian female, was wrongfully discharged from the program because an accommodation for her diagnosed disability of Attention Deficit Hyperactive Disorder was not provided to her.  Kopper, a 25 year old Caucasian female, was constructively discharged from the program after she was denied the ability to attend clinical hours or make up the missed hours due to an injury.  Kellett, a 63 year old Caucasian female, was discharged from the program based on her age for receiving an "F" after defendants arbitrarily and capriciously changed the grading system.  Rodriguez, a 37 year old gay Hispanic male, was wrongfully discharged from the program due to discriminatory animus after receiving a third "C" resulting from the arbitrary and capricious grading system.  Lane, a 27 year old female of Middle Eastern decent, was constructively discharged from the program due to discriminatory animus after she was told that she was not mentally fit to continue and could not pass a research class.

The Complaint sets forth thirteen claims: I (breach of contract), II (breach of the duty of good faith and fair dealing), III (fraud), IV (negligence), V (violation of the Rehabilitation Act and Americans with Disabilities Act), VI (unjust enrichment), VII (promissory estoppel), VIII (constructive dismissal/retaliation), IX (intentional misrepresentation), X (negligent misrepresentation), XI (intentional infliction of emotional distress), XII (negligent infliction of

emotional distress), and XIII (age/disability/sexual orientation/gender/racial discrimination). All counts apply to all plaintiffs except Count V which applies only to Buescher and Count VIII which applies only to Lane and Kopper.

This matter is now before the Court upon defendants' Motion to Dismiss Counts II, III, IV, V, IX, XI, XII, and XIII.

### **Standard of Review**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir.1997). As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

**Discussion**

Defendants argue that Counts II, III, IV, V, IX, XI, XII, and XIII fail to state a claim.

**(a) Count II**

Count II alleges that defendants had a duty to act in good faith and to deal fairly with plaintiffs regarding the contract between them, and that defendants breached that duty. Relying on Sixth Circuit precedent, defendants argue that no such claim is recognized under Ohio law:

> [E]xcepting insurance contracts, ... Ohio courts have been circumspect in allowing tort remedies for breaches of [duties of good faith and fair dealing]. In fact, when addressing a contractual dispute between a school and its former employees and students, the Ohio Court of Appeals held that there is no separate tort cause of action for breach of good faith that is separate from a breach of contract claim.

*Valente v. University of Dayton*, 438 Fed.Appx. 381 (6th Cir. 2011) (internal citations and quotations omitted) (The court rejected a law school student's breach of good faith and fair dealing claim in an action against the school arising from a disciplinary proceeding against him.) Plaintiffs present no argument in opposition and the Court finds that Count II fails to state a claim.

**(b) Counts III and IX**

Count Three alleges fraud. Count IX alleges intentional misrepresentation. It is not disputed that both claims must be plead with particularity. Plaintiffs must prove: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material

4

to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Ford v. New Century Mortg. Corp.*, 797 F.Supp.2d 862, 873 (N.D. Ohio 2011). Under Ohio law, to properly plead a claim for fraud, the plaintiff must: (1) specify the statements claimed to be false, (2) state in the complaint the time and place where the statements were made, and (3) identify the defendant claimed to have made the statements. *McCauley v. LaYacona,* 2013 WL 3941098 (Ohio App. 5th Dist. July 26, 2013) (citations omitted).

Defendants contend that plaintiffs fail to plead, at a minimum, the time and place the statements were allegedly made, or which defendant allegedly made the statements. In response, plaintiffs point out that their Complaint alleges the following:

- Defendants misrepresented to Plaintiffs that the ABSN program fulfilled all the criteria to obtain approval from the Ohio Board of Nursing and full accreditation. At all times relevant, Defendants knew these representations to be false.

- Defendants misrepresented to Plaintiffs that they had in place the necessary clinical relationships with major Cleveland Area hospitals and healthcare facilities so as to facilitate the clinical experience marketed to Plaintiffs. At all times relevant Defendants knew these representations to be false.

- Defendants misrepresented a Course Progression Standard as a measure of grading and changed it multiple times throughout the semesters, in violation of both the contract with Plaintiffs as well as the Ohio Board of Nursing requirements. At all times relevant, Defendants knew these representations to be false.

- Defendants misrepresented the dismissal policies. At all times relevant Defendants knew these representations to be false.

- Defendants misrepresented the mid-semester remediation policy. At all

times relevant Defendants knew these representations to be false.

- Defendants misrepresented that the ABSN program is in compliance with
the laws of the United States of America and with the State of Ohio as
they pertain to reasonable accommodations for students with disabilities.
At all times relevant Defendants knew these representations to be false.

(Compl. ¶ 44 a-f)

These allegations, however, fail to identify the time and place the statements were allegedly made and which defendant allegedly made the statements. Thus, the Court agrees with defendants that these counts must be dismissed as plaintiffs do not allege the circumstances under which the alleged misrepresentations were made.

Counts III and IX are dismissed.

**(c) Count IV**

Count IV alleges that defendants were negligent in their hiring and supervision of the ABSN administrative staff and faculty.  Defendants assert that a claim for negligence in the university-student context is not cognizable under Ohio law because Ohio courts have recognized that such a claim "is essentially one of educational malpractice" which is not recognized in Ohio.  *Lemmon v. Univ. of Cincinnati*, 112 Ohio Misc.2d 23 (Ohio Ct.Cl.2001).

Plaintiffs argue that their claim is for negligent hiring and supervision and, therefore, is distinguishable from educational malpractice. The Court disagrees.  In a factually similar case, plaintiffs in *Baker v. Oregon City Schools,* 2012 WL 762482 (Ohio App. 6th Dist. March 9, 2012), sued the Oregon City Schools Board of Education, dba Oregon Career & Technology Center (OCTC), an accredited institution of higher learning, alleging it offered a Green Energy, Electrical, & Environmental Specialist adult education program as part of its curriculum to provide education in specific identified areas delineated in the syllabus for the program.

Plaintiffs alleged that OCTC and its agents made certain representations in brochures and the student handbook that were known to be false and also enticed students to enroll in the program. Plaintiffs were all students who enrolled in the first class to take the program.  They asserted that the program did not live up to the brochure and promises of the agents of OCTC because of the poor facilities provided for classroom instruction, the incompetency of the instructors, the lack of instruction on promised curriculum, the lack of hands-on training, the failure of the program directors to make any changes after the students demanded change, and the lack of promised job shadowing. Their claim for negligence was dismissed by the trial court (and apparently not challenged on appeal) because it was "in fact a claim of educational malpractice which is not cognizable under Ohio law."

Plaintiffs herein distinguish that case by asserting that it, unlike their own claims, involved educational malpractice given that it alleged substandard education.  But, plaintiffs' allegations that defendants' failure to provide them with a quality nursing education through the ABSN program despite the representations made in defendants' marketing of the program and statements made in the handbook, do amount to the same claim even though plaintiffs do not use the term "substandard education."

Plaintiffs also argue that as defendants have not challenged their negligent misrepresentation claim in Count X, they "tacitly concede" that there are negligence claims that exist outside the category of educational malpractice.  Plaintiffs' position in this regard is unavailing.  As another court in this district noted, "Ohio's courts recognize misrepresentation claims as distinct from educational malpractice claims."  *Popson v. Danbury Local School Dist.,* 3:04 CV 7056 (November 1, 2004, Judge Gwin) (citing *Malone v. Academy of Court Reporting*,

64 Ohio App.3d 588 (Ohio App. 10th Dist.1990) ("In Ohio, breach of contract and misrepresentation claims by students against educational institutions have been entertained by the courts for some time.")

Count IV is dismissed.

**(d) Count V**

Count Five alleges that defendants discriminated against plaintiff Buescher in violation of the ADA and Rehabilitation Act. Defendants argue that defendant Farish cannot be held individually liable under either statute and plaintiff failed to exhaust her administrative remedies.

Plaintiff did not oppose the argument regarding individual liability and, therefore, claims in this count against Farish are dismissed for the reasons stated by defendants.

Plaintiff argues that she was under no obligation to administratively exhaust because the ADA authorizes a private right of action. Defendants rely on case law in the employment context which recognizes that an employee must file an EEOC charge prior to filing an ADA claim in court. That law is inapplicable as this case does not involve alleged employee discrimination. Defendants also cite to law involving a claim against a school board that the student was deprived of a free and appropriate public education. But, plaintiff correctly points out that her claim is brought pursuant to Title III of the ADA which imposes no exhaustion requirement. Therefore, Count V as it relates to the ADA is not dismissed for failure to exhaust.

Plaintiff also argues that she was under no obligation to administratively exhaust because the Rehabilitation Act authorizes a private right of action. Law relied upon by defendants requiring federal employees complaining of handicap discrimination in employment to exhaust administrative remedies before availing themselves of judicial remedies under the Rehabilitation

8

Act is inapplicable as this is not an employment case and does not involve a federal employee.[1] Defendants also point to two district court cases which they assert support their argument that Rehabilitation Act claims must be exhausted first in the education context.  The Court disagrees. In *Leonard v. Cleveland Metropolitan School District*, 2011 WL 5869606 (N.D.Ohio Nov. 16, 2011), a father brought suit on behalf of his son against the school district alleging disability discrimination under the Rehabilitation Act and the ADA.  The court stated that both of these statutes require exhaustion of the administrative remedies provided by the Individuals with Disabilities Education Act (IDEA)[2] before a civil claim may be pled. 20 U.S.C. § 1415(1). "The IDEA requires exhaustion wherever relief is available under the IDEA itself." The Sixth Circuit earlier explained:

> The Rehabilitation Act provides in § 504 that
>
>> [n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
>
> 29 U.S.C. § 794(a). When a claim under this statute involves public education, we must consider a provision in the Individuals with Disabilities Education Act (IDEA). The IDEA states that, before bringing claims under other statutes (specifically listing the Rehabilitation Act) seeking 'relief that is also available under this subchapter,' the administrative procedures in § 1415 must be exhausted to the same extent 'had the action been brought under this subchapter.' 20 U.S.C. § 1415( l ). That language refers to Subchapter II of Chapter 33 of the IDEA, a detailed provision setting forth procedures to be established by state educational agencies that receive federal assistance, 'to ensure that

---

[1]  The Sixth Circuit also recognized in *Tuck v. HCA Health Services of Tennessee*, 7 F.3d 465 (6th Cir. 1993), that although federal employees bringing employment discrimination claims must first exhaust their administrative remedies, non-federal employees are not subject to that requirement.

[2]  The IDEA applies to children with disabilities in the education context.

9

>children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies.' 20 U.S.C. § 1415(a).

*S.E. v. Grant County Board of Education,* 544 F.3d 633 (6th Cir. 2008). The claim herein does not involve public education, and the IDEA which requires prior exhaustion of administrative remedies is inapplicable.

The remaining case relied upon by defendants is also inapplicable. In *Horen v. Board of Educ. of City of Toledo Public School Dist.,* 2013 WL2403999 (N.D.Ohio May 31, 2013), parents of a handicapped student brought an action against the board of education of the city public school district alleging that the board deprived the student of free and appropriate public education (FAPE) under the IDEA and violated the ADA and Rehabilitation Act. The court concluded that the latter claims must be dismissed for failure to exhaust administrative remedies "in light of the doctrine that 'whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504 [of the Rehabilitation Act], or the Constitution, they must first be exhausted in state administrative proceedings.' " The court also cited to *Sagan v. Sumner County Bd. of Educ.*, 726 F.Supp.2d 868, 878 (M.D.Tenn.2010) ("Regardless of how a claim is couched ... any claim that relates directly to a student's access to an FAPE is subject to the exhaustion requirement.").

For these reasons, Court V is dismissed as to Farish. Defendants' motion seeking dismissal of the ADA and Rehabilitation Act claims against BWU for failure to exhaust is denied.

**(e) Count XI**

Count XI alleges intentional infliction of emotional distress as to all plaintiffs. It is well-

settled under Ohio law that one who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. To reach the requisite level of "extreme and outrageous," the conduct must "go beyond all possible bounds of decency, such as to be regarded as atrocious and utterly intolerable in a civilized community." It must be a case in which "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Yeager v. Local Union* 20, 6 Ohio St.3d 369 (1983).

Defendants argue that plaintiffs fail to plead sufficient facts, even if taken as true, which would support this claim which Ohio courts have narrowly defined.  Plaintiffs assert that they have provided enough to survive dismissal pointing to their Complaint which alleges that plaintiffs, who had achieved the highest levels of success in their respective disciplines and careers, satisfied all admission requirements for the program and were selected for the inaugural class.  Plaintiffs made life-altering decisions to enroll based on defendants' representations.  But, once in the program, standards and grading policies outlined in the handbook changed in an arbitrary and capricious manner and resulted in plaintiffs' wrongful termination from the program.

*Twombly/Iqbal*, cited above, require sufficient factual matter stating a claim to relief that is plausible on its face and allowing this Court to draw the reasonable inference that defendants are liable for intentional infliction of emotional distress. The allegations to which plaintiffs point are insufficient to constitute conduct so extreme in degree as to go beyond all possible bounds of decency, to be regarded as atrocious, utterly intolerable, and lead an average member of the

11

society to yell, "Outrageous!"

Accordingly, Count XI is dismissed.

**(f) Count XII**

Count XII alleges negligent infliction of emotional distress as to all plaintiffs. Defendants point out that "Ohio courts have limited recovery for negligent infliction of emotional distress to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person. Where an individual's claim does not arise out of such circumstances, the individual fails to state a claim for emotional distress under Ohio law." *Klusty v. Taco Bell Corp.,* 909 F.Supp 516 (S.D. Ohio 1995) (citations omitted). In response, plaintiffs ignore this law and present no specific argument or point to any specific facts in support of this claim.  As plaintiffs were not bystanders to an accident or in fear of physical harm, this claim is dismissed.

**(g) Count XIII**

Count Thirteen alleges discrimination based on age, disability, sexual orientation, gender, and race.  This claim states,

> Defendants owe a duty to all students of the ABSN program to foster a program free from discrimination.
>
> From a diverse multicultural student body of 29 original members in the inaugural cohort, 80% of those dismissed were members of minority and protected classes.
>
> Plaintiff Esteban Rodriguez is an openly homosexual, Hispanic male; Plaintiff Rachel Lane is a middle-eastern female (Ms. Lane has a learning disability but did not seek an accommodation after the director of the ABSN stated that none would be offered); Plaintiff Brittany Buescher is [a] learning disabled female; Plaintiff Irene Kellett is a 63 year-old female; Emily Kopper is a female.
>
> In addition to the Plaintiffs the following students also were dismissed:
> 1. An Indian, Sikh, male.

      2. A hearing disabled Asian female.
      3. A male over the age of 50.
      4. A single mother.

      The remaining students in the inaugural cohort are 93% Caucasian. None are over the age of 50 years of age.

(Compl., ¶¶ 103-107.)

Defendants argue that the Complaint neither states what federal or state law under which plaintiffs are alleging discrimination, and fails to allege what adverse action defendants took against plaintiffs based upon a protected classification. In their response, plaintiffs do not identify any statute upon which they are asserting their claim. They only assert that their earlier factual allegations, "not the least of which was the unlawful dismissal," provide the adverse conduct taken because of their membership in a protected class.

In their Complaint's statement of jurisdiction, plaintiffs only refer to the ADA, Rehabilitation Act, and common law of the State of Ohio. Plaintiffs' failure to identify a statute which has allegedly been violated warrants dismissal of this claim.

Count XIII is dismissed.

**Conclusion**

For the foregoing reasons, defendants' Motion to Dismiss Counts II, III, IV, V, IX, XI, XII, and XIII is granted except as to that portion of Count V alleging a violation of the ADA and Rehabilitation Act against defendant BWU.

IT IS SO ORDERED.

                                        /s/ Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
Dated: 5/12/14                    United States District Judge